FILED
 2015 Aug-28  AM 11:15
U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **TERRY GENE ROBERTS,** } | |
| } | |
|     **Plaintiff,** } | |
| } | |
| v. } | Civil Action No.: 6:14-CV-01580-RDP |
| } | |
| **CAROLYN W. COLVIN,** } | |
| **Acting Commissioner of the Social** } | |
| **Security Administration,** } | |
| } | |
|     **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Terry Gene Roberts brings this action pursuant to § 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II. *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the parties' briefs, the court finds that the decision of the Commissioner is due to be affirmed

**I.     Proceedings Below**

Plaintiff filed his application for disability and DIB on August 24, 2011. (Tr. 59–60). He alleged a disability onset date of December 1, 1999. (Tr. 59, 112). Plaintiff's application was initially denied by the Social Security Administration ("SSA"), and denied again upon reconsideration. (Tr. 59, 60, 61–65). On January 11, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 67). The request was granted and a hearing was held on December 11, 2012 via video teleconference in Jasper, Alabama before ALJ David L. Stephens. (Tr. 21–58). At the hearing, Plaintiff and Vocational Expert Dr. David Head ("VE") each testified. (*Id.*).

In his decision, dated March 15, 2013, the ALJ determined Plaintiff had not been disabled under Section(s) 216(i) and 223(d) of the Act from December 1, 1999, the alleged onset date, through December 31, 2003, the date last insured. (Tr. 7–16). On July 25, 2014, the Appeals Council ("AC") denied Plaintiff's request for review of the ALJ's decision, which became the Commissioner's final decision, and thus a proper subject of this court's appellate review. (Tr. 1–3). 42 U.S.C. § 405(g).

## II.     Facts

Plaintiff was fifty-eight years old at the time of the hearing. He was forty-five to forty-nine from his alleged onset date through the last date insured. (Tr. 187). He has a high-school equivalent education, is married, and has two adult children. (Pl.'s Br. 2; Tr. 28, 34, 40, 155, 690). Plaintiff testified that he served six years in the Army Reserve. (Tr. 44–45). Plaintiff's primary past employment was in building and installation of duct work for heating and air conditioning systems, and he also worked briefly delivering furniture and appliances. (Tr. 28, 38, 168; Pl.'s Br. 2–3). Plaintiff's primary past employment was classified by the VE as being in the semiskilled, heavy exertional classification. (Tr. 51). Plaintiff alleges that he became disabled on December 1, 1999. (Tr. 24). He testified, "I just couldn't do my job. I couldn't crawl to get under houses like I did before." (Tr. 31). Although he worked during 2007, 2009, and 2010, the work was part-time and his earnings fell below the threshold that would have qualified as substantial gainful activity. (Tr. 12. 28, 34–35). During two of those years, 2007 and 2009, Plaintiff worked on a self-employed basis for his son's heating and air conditioning business. (Tr. 35).

Plaintiff alleges that he suffers from disabling pain of the shoulders, knees, and back secondary to arthritis, along with difficulty breathing when performing physical labor. (Tr. 13).

Plaintiff also testified that after he could no longer work, he became depressed, "secluded [him]self, . . . felt useless," and felt "there was just no sense in trying anymore . . . ." (Tr. 44). He did not seek psychiatric help at that time, although later, at the time of the hearing, he was seeing a psychiatrist. (*Id.*).

Plaintiff's primary care physician throughout the period of alleged disability was Bill Yates, M.D. The record contains office treatment records of Dr. Yates covering November 1998 through November 2005, January 2006 through September 2011, and January through October 2012. (Tr. 269–331, 364–417, 533–58, 704–05). Plaintiff's chief complaints to Dr. Yates were shoulder, back, and knee pain, with a variety of other, more occasional complaints. (*Id.*). Dr. Yates wrote a statement dated January 2, 2013 (after the ALJ hearing), the medical opinion portion of which stated, in its entirety: "Mr. Roberts has been a patient of mine for several years. In my medical opinion he has been disabled since 2003 due to several medical conditions." (Tr. 705).

The record contains, as well, treatment records with Lorn Miller, M.D. and his associates at the Center for Neurological Care during 2011, chiefly for shoulder and back pain. The record also contains records of evaluation and treatment by Michael Gibson, M.D. at the Birmingham Pain Center in 2012. (Tr. 418–514, 567–703). Dr. Gibson's initial diagnostic assessment of Plaintiff on March 6, 2012 was lumbar degenerative disc disease, multilevel, with a bulging disc and a questionable L4 sensory radiculopathy; an annular tear at L5-S1; osteoarthritis of the shoulders; osteoarthritis of the knee; and carpal tunnel syndrome. (Tr. 692).

Plaintiff testified that he first injured his left shoulder at 22 years of age when he was injured by a car. He related to Dr. Mark Smith at the Center for Neurological Care that the left shoulder injury occurred when a jack stand collapsed and a car fell on his shoulder. (Tr. 36, 488;

3

Pl.'s Br. 3). Plaintiff further testified that his right shoulder injury occurred because "it just wore out from the type of work that I was doing." (Tr. 36–37). Plaintiff had surgery to repair his left shoulder rotator cuff, performed by Kendall Vague, M.D. in April 2010. (Tr. 267–68). On follow-up three weeks after the surgery, Dr. Vague found Plaintiff recovering well, with "good ROM [range of motion] of the left shoulder much improved up to forward flexion of about 130 degrees" and "much more comfortable." (Tr. 266). Dr. Vague's physical exam upon discharge showed Plaintiff had "excellent ROM of his shoulder and no significant weakness." (Tr. 265). However, in answer to a question from the ALJ, Plaintiff testified that the shoulder surgery "really didn't improve things." (Tr. 38). The record contains ample indications that Plaintiff's joint pain is a result of work. For example, as Dr. Yates noted in November 1999, "Knees have degenerative changes from his job where he crawls in and out of houses." (Tr. 413).

The medical record contains continuous documentation of Plaintiff's obesity, with his weight fluctuating roughly between 275 and 310 pounds on a 6-foot frame. (Tr. 368, 375, 378, 387, 394, 422, 457, 522, 546). In his decision, the ALJ calculated Plaintiff's Body Mass Index ("BMI") for one of his intermediate weight figures, 288 pounds on December 16, 2003 at Dr. Yates's office, yielding a BMI of 39.1—well into the "obesity" range.[1] (Tr. 412).f

On November 9, 2011, Robert H. Heilpern, M.D. completed a Physical Summary form as part of a Disability Determination. Dr. Heilpern noted Plaintiff's allegations of "bad feet, knees, shoulders, [and] back," concluding, "We do not have any medical evidence or functional limitations" for the alleged period of disability. (Tr. 340).

---

[1] The ALJ's computation, based on a weight of 288 lbs. (130.9 kg) and a height of 6 feet or 72 inches (1.81 m), applied the BMI formula of weight in kilograms divided by the square of height in meters ($kg/m^2$); the classification scheme established by the National Institutes of Health ("NIH") for adult men and women set 25–29.9 as the range for "overweight" and 30.0 or above as "obesity." *Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults* (NIH Publication No. 98-4083 (Sept. 1998)) (quoted by SSR 02-1p, Policy Interpretation Ruling, Titles II and XVI: Evaluation of Obesity.

The record contains office treatment records for Plaintiff with Jan Westerman, M.D., relating to a sleep study performed in August 2003 at Pulmonary & Sleep Associates of Jasper, P.C. and office visits in January and February 2012 at Smith Lake Urgent Care. (Tr. 526, 515–25). According to Dr. Westerman's treatment notes, Plaintiff's chronic obstructive pulmonary disease was stable under medications, and "[Plaintiff] feels oxycodone [sic] with Percocet for breakthrough pain has allowed him to maintain his functional abilities." (Tr. 516). Dr. Westerman noted that Plaintiff's "sleep apnea has been stable on CPAP." (*Id.*). Plaintiff reported to Dr. Westerman that "the current pain management regimen . . . is making a difference in his life," leading to better physical functioning, family life, and social relationships. (*Id.*). Dr. Westerman's assessment of Plaintiff included the following diagnoses: chronic obstructive pulmonary disease; obstructive sleep apnea; chronic pain syndrome; low back pain; muscle spasm; osteoarthritis of spine; pain in joint (multiple sites); seizure disorder; hypertension (essential); and degenerative joint disease. (Tr. 518).

On September 28, 2012, Plaintiff saw Thomas A. Staner, M.D., on referral by Dr. Gibson, for neurological evaluation of back pain—specifically, severe left lumbosacral radicular pain over the prior two years. (Tr. 585–86). Dr. Staner's diagnostic impression was of "[l]eft lumbosacral radicular pain suggested most in the S1 root distribution. Having said that, we have some pathology at left L3-4 lateral recess but nothing lower down that I see directly." (Tr. 585). Dr. Staner stated surgery was possible, but further testing was required. (*Id.*)

### III.   ALJ Decision

Disability under the Act is determined under a five-step test; a finding at any of these steps that the claimant is disabled, or is not disabled, concludes the analysis. 20 C.F.R. § 404.1520. In the first step, the ALJ must determine whether the claimant is engaged in

5

substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).

In the second step, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.*

In the third step of the analysis, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. However, the ALJ must first determine the claimant's residual functional capacity ("RFC"), that is, his ability to work despite his impairments. 20 C.F.R. § 404.1520(e).

In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined capable of performing past relevant work, the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, the analysis proceeds to the fifth step. 20 C.F.R. § 404.1520(a)(4)(v).

In the fifth step of the analysis, the ALJ determines whether the claimant is able to

perform any other work in accordance with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence of significant numbers of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ initially determined Plaintiff satisfied the insured status requirements of the Act through December 31, 2003. (Tr. 16). Then, after determining that Plaintiff did not have earnings that rose to the level of substantial gainful activity during the period from his alleged onset of disability through the last date of coverage (thus satisfying the first step of the analysis) the ALJ found that Plaintiff's medically determinable impairments were obesity, osteoarthritis, and chronic obstructive pulmonary disease (COPD). (Tr. 12). As in the third step, the ALJ found that Plaintiff did not have an impairment, or a combination of impairments, that significantly limited his ability to perform basic work-related activities for 12 consecutive months and therefore Plaintiff did not have a severe impairment or combination of impairments. (Tr. 12–15). 20 C.F.R. § 404.1521 *et seq*. With the finding of no severe impairment or combination of impairments, the ALJ's analysis concluded at the third step, with no need to continue to the fourth and fifth steps. In light of the foregoing, the ALJ found that Plaintiff was not under a disability, as defined by the Act, from December 1, 1999 through December 31, 2003. 20 C.F.R. 404.1520(c), 416.920(c).

### IV.  Plaintiff's Argument for Reversal

While Plaintiff's argument for reversal cannot be characterized as well developed, the court is able to discern two issues. First, Plaintiff argues that the ALJ erred in not finding his arthritis impairment severe. (Pl.'s Br. 9–10). Plaintiff also argues the ALJ erred in not considering the effects of his obesity at each step of the analysis, and in not considering the

7

interaction of his obesity with his other impairments, particularly his arthritis. (Pl.'s Br. 10–12).

The court reviews these arguments below.

## V.     Standard of Review

In reviewing the Commissioner's decision, this court is limited to two questions. First, does substantial evidence sustain the ALJ's decision? 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982). Second, did the ALJ apply the correct legal standards in reaching his decision? *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). In sum, "[the court] review[s] the ALJ's 'factual findings with deference' and his 'legal conclusions with close scrutiny.'" *Riggs v. Soc. Sec. Admin., Comm'r*, 522 F. App'x 509, 510–11 (11th Cir. 2013) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)).

42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; it must determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). More than a scintilla, but not necessarily a preponderance; substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971) (quoting *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 217 (1938)); *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982) (quoting *N.L.R.B. v. Columbian Enameling and Stamping Co.*, 306 U.S. 292, 300 (1939)).

The court submits the legal standards underlying the Commissioner's decision to review *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Even a determination

supported by substantial evidence may be in error if "coupled with or derived from faulty legal principles." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  While acknowledging that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**VI.   Discussion**

After careful review, and for the reasons stated below, the court concludes that the ALJ's decision is due to be affirmed.

> **A.   Substantial Evidence Supports the ALJ's Finding That Plaintiff's Arthritis Is Not a Severe Impairment.**

Plaintiff argues that the ALJ erred in finding that his arthritis was not a severe impairment. (Tr. 9–10).  Plaintiff relies on *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), for the proposition that, at the second step of the disability analysis, an impairment will be considered severe with even a modest showing of interference with the ability to work.  (Tr. 9–10).

At step two of the sequential evaluation process, the claimant bears the burden of presenting evidence establishing a severe impairment or combination of impairments; however, "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (quoting *Appeals Council Review of Sequential Evaluation Under Expanded Vocational Regulations* (1980)).  In other words, step two "is a threshold inquiry" which "allows only claims based on the most trivial impairments to be rejected." *McDaniel*, 800 F.2d at 1031.

Of course, Plaintiff bears the burden of demonstrating that his impairment, or combination of impairments, is severe. The fundamental question, then, is this: Does substantial evidence support the ALJ's step-two finding that Plaintiff failed to meet the burden of showing that his impairment rose above the level of a "slight" abnormality—one not expected to interfere with his ability to work? *McDaniel*, 800 F.2d at 1031.

To begin, it is well established that diagnosis alone does not signify disability. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("the mere existence of . . . impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard"). The ALJ recognized Dr. Yates's diagnosis of arthritis. (Tr. 14). He also noted the arthritis profile Dr. Yates ordered in November 2002, was negative for rheumatoid arthritis. (Tr. 14, 392–93). Dr. Yates's treatment notes regarding a January 1999 x-ray of Plaintiff's left knee indicate that, in his view, the x-ray did not "really show anything" and he also determined that a left shoulder x-ray taken in February 2002 "look[ed] alright [sic]." (Tr. 401, 417). The ALJ noted that Dr. Yates found "tenderness in the lower lumbar muscles" but that Plaintiff was neurologically intact with full range of motion. (Tr. 14, 409, 415). The ALJ took into account Plaintiff's statement to Dr. Gibson in March 2012 that medications "control[led] his shoulder pain and enable[d] him to lift his grandchilren [sic] and continue working." (Tr. 15, 434). Plaintiff also reported to Dr. Miller, in March 2011, that he was running an "air conditioner company and pull[ing] and lift[ing] air conditioners." (Tr. 15, 426).

The ALJ stated that he gave the opinion of Dr. Yates, Plaintiff's treating physician, "little weight." (Tr. 15). He justified this decision by noting that Dr. Yates's statement that "[Plaintiff] has been disabled since 2003 due to several medical conditions" intrudes on the ALJ's domain of determining disability and that it refers to no specific medical conditions. (*Id.*). A physician's

opinion on a matter reserved to the Commissioner is not entitled to any special weight. *Denomme v. Comm'r., Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013). It is true, of course, that, absent good cause, the testimony of a treating physician must be given substantial or considerable weight. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). And an ALJ "must clearly articulate the reasons" for giving less weight to the opinion of a treating physician. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Grounds for discounting the opinion of a treating physician exist where the doctor's opinion is conclusory, not supported by the evidence, inconsistent with the doctor's own medical records, or where the evidence supports a contrary finding. *Lewis*, 125 F.3d at 1440.

Here, Dr. Yates's statement was clearly conclusory: it simply asserted the opinion that Plaintiff had been disabled "since 2003." (Tr. 705). It did not refer to any specific medical conditions suffered by Plaintiff, nor to any of the doctor's own clinical observations or any laboratory or other test results. (*Id.*). Dr. Yates's opinion, to put it simply, is of limited value, and the ALJ properly assigned it "less weight." (Tr. 15).

A finding that a claimant's impairments are not severe is relatively unusual, but where an ALJ's decision adverse to a claimant is sufficiently thorough and is supported by substantial evidence, such a decision will be affirmed. *Gray v. Comm'r of Soc. Sec.*, 426 F. App'x 751, 753 (11th Cir. 2011). Here, the record as a whole persuades this court that substantial evidence supports the ALJ's finding that Plaintiff's arthritis was not a severe impairment.

    **B.**    **The ALJ Properly Considered Plaintiff's Impairment of Obesity.**

In contrast to his position on his arthritis, Plaintiff acknowledges that his obesity is a non-severe impairment. (Pl.'s Br. 12). Nevertheless, he argues that the ALJ erred by failing to consider his obesity at each step of the disability analysis -- including in determining his RFC --

and by failing to consider it in combination with his arthritis and other impairments.  (Pl.'s Br. 10–12).

In his decision, the ALJ noted Plaintiff's obesity.  (Tr. 14) (recognizing that "[a]t all times during the period at issue, [Plaintiff] was obese.").  The record amply demonstrates Plaintiff's issues in this area, with recorded weights varying between 275 and 310 pounds during and after the period of alleged disability, and BMI figures substantially above the NIH guidelines for obesity.  (Tr. 368, 375, 378, 387, 394, 422, 457, 522, 546).

However, the Commissioner's Rulings make clear that obesity is not necessarily a "severe" impairment, nor is there any "specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment."  SSR 02-1p at *4.  Here, as the ALJ aptly observed in his decision, "[Plaintiff] has not alleged, and no treating or examining medical source has specifically attributed, any limitations to [his] obesity."  (Tr. 14).  While the words "obese" and "obesity" appear with some frequency in Plaintiff's medical record, medical findings or opinions regarding limitations on Plaintiff's ability to work due to his obesity are glaringly absent.  The record includes medical recommendations that can be inferred as being related to Plaintiff's obesity -- as with Dr. Miller's May 2011 recommendations of dietary changes including avoiding white sugars and flours, and of cardiovascular exercise -- but the record is essentially silent as to any effect of obesity on Plaintiff's ability to do basic work activities.  (Tr. 424).

In support of his argument that the ALJ was required to consider his obesity in assessing his RFC, Plaintiff cites to the Commissioner's Regulations, Rulings, and to the district court case of *Byner v. Colvin*, 2015 WL 225455 (N.D. Ala.).  *See* 20 C.F.R. 416.945(a)(2); S.S.R. 02-1p.  The difficulty with Plaintiff's argument on this score is that determining a claimant's RFC occurs at a later step in the sequential analysis, and a finding of non-disability (or of disability) at any

12

step concludes the analysis. 20 C.F.R. § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Here, the ALJ recognized Plaintiff's obesity as one of his impairments while determining, at the second step of his analysis, that his obesity was not a severe impairment. (Tr. 14).

As to Plaintiff's argument that the ALJ did not properly consider his obesity in combination with his other impairments, particularly his arthritis, the Eleventh Circuit has consistently held that an ALJ's finding regarding a claimant's "impairment or combination of impairments" demonstrates that an ALJ did in fact consider the claimant's impairments in combination. *Wilson v. Barnhart*, 284 F.3d 1219, 1224–25 (11th Cir. 2002); *Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011). Here, the ALJ determined that "[Plaintiff] did not have an impairment or combination of impairments that significantly limited" his ability to do basic work activities for at least twelve consecutive months. (Tr. 12). Therefore, the court concludes that the ALJ indeed considered Plaintiff's impairments, including his obesity, both singly and in combination. After properly considering the medical evidence of record, the ALJ considered Plaintiff's impairment of obesity. The ALJ's findings are supported by substantial evidence.

## VII. Conclusion

The court concludes that the ALJ's disability determination for Plaintiff for the period between the onset of his alleged disability on December 1, 1999 and the date last insured, December 31, 2003, is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 28, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE